IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HELENA KRIZEK, Birth Mother of BIANCA HELEN KRIZEK (DECEDENT)<br><br>              Plaintiff,<br>  vs.<br><br>QUEENS MEDICAL CENTER; HAWAII RESIDENCY PROGRAM; DR. MATTHEW DUMOUCHEL; DR. NOBUHIRO ARIYOSHI; DR. ITTIKORN SPANUCHART; DR. WENDY W. HSU; DR. HAO CHIH HO; DR. CHRISTOPHER HAPPY; AND DR. T. SCOTT GALLACHER,<br><br>              Defendants. | CIV. NO. 18-00293 JMS-WRP<br><br>ORDER (1) GRANTING DEFENDANT HAPPY'S MOTION TO DISMISS, ECF NO. 156; (2) GRANTING IN PART AND DENYING IN PART QMC DEFENDANTS' MOTION TO DISMISS, ECF NO. 158; (3) GRANTING HRP DEFENDANTS' SUBSTANTIVE JOINDER, ECF NO. 161; AND (4) GRANTING DEFENDANT DUMOUCHEL'S MOTION TO DISMISS, ECF NO. 159 |

**ORDER (1) GRANTING DEFENDANT HAPPY'S MOTION TO DISMISS, ECF NO. 156; (2) GRANTING IN PART AND DENYING IN PART QMC DEFENDANTS' MOTION TO DISMISS, ECF NO. 158; (3) GRANTING HRP DEFENDANTS' SUBSTANTIVE JOINDER, ECF NO. 161; AND (4) GRANTING DEFENDANT DUMOUCHEL'S MOTION TO DISMISS, ECF NO. 159**

## I. INTRODUCTION

On September 6, 2019, Plaintiff Helena Krizek ("Plaintiff"), birth mother of decedent Bianca Helen Krizek ("Bianca Krizek"), filed her First Amended Complaint ("FAC") alleging claims arising from the death of Bianca Krizek against Defendants Queen's Medical Center ("QMC"), Hawaii Residency

Program ("HRP"), Dr. Matthew DuMouchel ("DuMouchel"), Dr. Nobuhiro Ariyoshi ("Ariyoshi"), Dr. Ittikorn Spanuchart ("Spanuchart"), Dr. Wendy W. Hsu ("Hsu"), Dr. Hao Chih Ho ("Ho"), Dr. T. Scott Gallacher ("Gallacher"), and City and County of Honolulu medical examiner[1] Dr. Christopher Happy ("Happy") (collectively, "Defendants"), in their official and individual capacities.  ECF No. 150.

Currently before the court are Happy's Motion to Dismiss all claims against him for failure to state a claim, or in the alternative, Motion to Strike Count I or Motion for Summary Judgment on Count I, ECF No. 156; a Motion to Dismiss filed by QMC, Hsu, Ho, and Gallacher (collectively, "QMC Defendants"), to dismiss claims 3 and 4, and to dismiss the "conspiracy" claim against them, ECF No. 158;[2] and DuMouchel's Motion for to Dismiss claims 3 and 4 against him, ECF No. 159.  Based on the following, the court GRANTS Happy's Motion to Dismiss without leave to amend; GRANTS in part and DENIES in part QMC Defendants' Motion to Dismiss, with leave to amend; and GRANTS DuMouchel's

---

[1] The official title pursuant to the City and County of Honolulu Revised Charter is "medical examiner."  The State of Hawaii's title for this position is "coroner."  For ease of reference, this Order refers to the position as "medical examiner."

[2] Defendants HRP, Ariyoshi, and Spanuchart (collectively, "HRP Defendants") substantively join QMC Defendants' Motion to Dismiss.  See ECF No. 161.

Motions to Dismiss, with leave to amend. The court also GRANTS HRP Defendants' Substantive Joinder.

## II. BACKGROUND

A. **Factual Background[3]**

On December 28, 2015, Bianca Krizek was treated at QMC's Emergency Room, and was hospitalized and transferred to QMC's Intensive Care Unit the next day. FAC ¶¶ 20, 24, ECF No. 150 at PageID #1103-04. She was in QMC's care, where she was "heavily sedated for a period of 4 weeks" before she passed away on February 5, 2016. *Id.* ¶ 67, ECF No. 150 at PageID #1114.

Pursuant to Bianca Krizek's autopsy, an investigation by the Medical Examiner's office was requested and performed by Happy. *Id.* ¶ 82, ECF No. 150 at PageID #1117. Plaintiff informed the Medical Examiner's office that the QMC autopsy report "contained incorrect information." *Id.* ¶ 84, ECF No. 150 at PageID #1118. Plaintiff also made numerous requests that Happy contact her to discuss Bianca Krizek's cause of death; the staff at the office "assured Plaintiff" that Happy would contact her as part of his investigation. *Id.* ¶ 85, ECF No. 150 at PageID #1118. Happy never contacted Plaintiff throughout the 20 months it took

---

[3] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

for him to conduct his investigation and to issue a death certificate.  *Id.* ¶¶ 86-87, ECF No. 150 at PageID #1118.

When the death certificate was issued on July 24, 2017, it stated the cause of death was "'infectious complications following blunt force injury of the lower left extremity with ankle fracture'" listing some "attenuated . . . contributing factors" but failing to list any of the "significant intervening causes that contributed to Bianca [Krizek's] death." *Id.* ¶ 88, ECF No. 150 at PageID #1118-19 (emphasis omitted).  The death certificate allegedly "intentionally excluded and disregarded the numerous errors and omissions in [her] care at QMC.  These errors and omissions at QMC included some blatant and obvious errors that should have been apparent from a review of the medical record.  But for those errors and omissions in Bianca [Krizek's] care she would not have died." *Id.* ¶ 89, ECF No. 150 at PageID #1119.

**B.     Procedural Background**

Initially proceeding pro se, Plaintiff filed a complaint on July 18, 2018 alleging the following claims for relief: (1) gross negligence; (2) negligence; (3) fraud in concealment; and (4) "nonfeasance/misfeasance/malfeasance" ("misfeasance").  ECF No. 1.  Plaintiff subsequently retained counsel on February

4

5, 2019, and has appeared through counsel since that date. *See* ECF No. 64; *see also* ECF No. 66.

On August 6, 2019, the court denied DuMouchel's motion for summary judgment, finding that Plaintiff's claims were not time-barred; granted Happy's motion for judgment on the pleading with leave to amend the claims of gross negligence, fraud in concealment, and misfeasance against Happy;[4] and denied Plaintiff's motion for joinder as moot. *See* ECF No. 139 at PageID #968-69.

Plaintiff filed her FAC alleging the same claims for relief: (1) gross negligence (as to all Defendants); (2) negligence (as to all Defendants other than Happy); (3) fraud in concealment (as to all Defendants); and (4) misfeasance (as to all Defendants). On September 19, 2019, Happy filed his Motion to Dismiss all remaining claims against him, or, in the alternative, move to strike or for summary judgment on the gross negligence claim. ECF No. 156. QMC Defendants filed their Motion to Dismiss claims 3 and 4, along with moving to dismiss the conspiracy theory against them. ECF No. 158. DuMouchel filed his Motion to Dismiss claims 3 and 4. ECF No. 159. On September 19, 2019, HRP Defendants

---

[4] Plaintiff conceded that she could not adequately amend the negligence claim against Happy, and thus, this claim was dismissed with prejudice and without leave to amend. ECF No. 139 at PageID #967.

5

substantively joined QMC Defendants' Motion to Dismiss. ECF No. 161. Plaintiff filed her Opposition to all Defendants' Motions on October 22, 2019. ECF No. 177. Defendants filed their Replies on October 29, 2019. ECF Nos. 178, 179, 180, & 181. The court held a hearing on November 12, 2019.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

## IV. **DISCUSSION**

A. **Happy's Motion to Dismiss**

Happy moves to dismiss all remaining claims against him—that is, claims 1 (gross negligence), 3 (fraud in concealment), and 4 (misfeasance).[5] Happy proffers five arguments as to why Plaintiff's FAC should be dismissed against him. Specifically, he claims that : (1) Plaintiff is precluded from alleging a claim of gross negligence against him pursuant to the court's prior order; (2) Plaintiff failed to plead sufficient facts amounting to malice or improper purpose required to overcome qualified immunity; (3) Happy does not have a duty to Plaintiff as to either the negligence-based claims or the fraud claim; (4) Plaintiff failed to articulate particular facts sufficient to meet the heightened Rule 9(b)

---

[5] Happy also moves, in the alternative, to strike or for summary judgment on the gross negligence claim. Because the court grants Happy's Motion to Dismiss, the court does not consider the alternative grounds raised in the Motion.

standard as to her fraud claim; and (5) the suit should, at the very minimum, be dismissed against Happy in his individual capacity, because the allegations only pertain to Happy in his official capacity as the medical examiner. As discussed below, the court finds that Plaintiff has not shown Happy has a duty to Plaintiff, and, separately, has failed to plead sufficient facts showing malice or improper purpose to overcome the doctrine of qualified immunity. The court now turns to each of these arguments. Because these are dispositive, the court will not consider the other arguments raised by Happy.

### 1. *Happy Does Not Owe a Legal Duty to Plaintiff*

The court determines as a matter of law[6] that Happy, as the medical examiner for the City and County of Honolulu, owes no legal duty to Plaintiff as to either the fraud or negligence-based claims. For purposes of the negligence-based claims, the court considers "whether such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Bidar v. AmFac, Inc.*, 66 Haw. 547, 551-52, 669 P.2d 154, 158 (1983) (internal citations

---

[6] The existence of a duty under Hawaii law is entirely a question of law. *See Ruf v. Honolulu Police Dept.*, 89 Haw. 315, 320, 972 P.2d 1081, 1086 (1999); *Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 385, 742 P.2d 377, 383 (1987).

and edits omitted). Similarly, as to the fraudulent concealment claim, there is no cognizable claim unless Plaintiff can show that Happy had a duty to disclose such purportedly material information. *See Skyline Zipline Global, LLC v. Domeck*, 2013 WL 1103084, at *9 (D. Haw. Mar. 15, 2013) (citing *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010)).[7]

Plaintiff argues that Happy, as the city medical examiner, had a legal duty to provide her with a complete and accurate death certificate in a timely manner. Although Plaintiff provides no specific authority showing she is entitled to a death certificate within a stated time frame, or that she is entitled to a death certificate containing *all* (as opposed to merely some) causes of Bianca Krizek's death, she cites to one City and County of Honolulu ordinance and two state statutes. None of these, however, establishes that Happy owed any duty to Plaintiff giving rise to the claims in the FAC.

First, Plaintiff relies on the "Powers, Duties and Functions" of a medical examiner set forth in the Revised Charter of the City and County of

---

[7] As this court stated in *Skyline Zipline Global, LLC*: "the elements of a fraud claim are that: (1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them" whereas "a defendant may be liable for a 'fraudulent concealment' where it (1) fails to disclose a fact that it knows may cause the plaintiff to act; and (2) the defendant had a duty to the plaintiff to exercise reasonable care to disclose that fact." 2013 WL 1103084, at *9 (internal citations omitted).

9

Honolulu,[8] a duty of the corner to forward copies of reports to any county or prosecuting attorney "without delay" under Hawaii Revised Statutes ("HRS") § 841-8,[9] and a duty to notify the next of kin under HRS § 841-15.[10] A plain reading of the ordinance and statutes shows that none of these creates a duty or

---

[8] This states that the "Powers, Duties and Functions" of the medical examiner include "[p]erform[ing] medical investigation services to establish the cause of any unattended death in the city in order to protect the rights of individuals and contribute legal evidence to the system of justice." Revised Charter of the City and County of Honolulu, Ch. 13 § 6-1303 (2017) ("Revised Charter"). This ordinance appears to be inapplicable because Bianca's death, occurring while hospitalized, was not an "unattended death."

[9] HRS § 841-8 provides for the "[d]uty to forward copy of reports to any county or prosecuting attorney and to person in charge of disposition of body" and states that

> (a) Every coroner, or deputy coroner, shall, without delay, forward to the county attorney in the case of coroners for the counties of Maui and Kauai, and the prosecuting attorney in the case of coroners for the city and county of Honolulu and the county of Hawaii, a true and correct copy of the inquisition.
> (b) The coroner's physician shall, in addition, make available without delay the death certificate of the person whose death was investigated to the person in charge of the disposition of the body so that the person in charge may file the death certificate with the local agent of the department of health as required by section 338-9.

[10] HRS § 841-15 provides for the "[n]otice to next of kin, expense" which states

> The coroner called to investigate the death of any person shall notify the next of kin, if known, of the death by telephone, letter, cable, or radiogram, as each case may necessitate. The director of finance of the county in which the death occurs may make the disbursement necessary to defray the expenses involved in the notification.

10

identifies a "legal right" to which Plaintiff was entitled and that Happy has violated.

And reading the ordinance and statutes together provides no basis to conclude that Honolulu's medical examiner, while performing his customary duties, owes a duty of care to specific members of the public as opposed to the public in general[11] (a point which Plaintiff appears to agree with).[12] For example, under the Revised Charter, such autopsies can be requested by *prosecuting attorneys*, and in fact, the medical examiner has an explicit duty to maintain "full and complete records" of such deaths and "promptly deliver" these records to the prosecuting attorney and the chief of police. Revised Charter, Ch. 13 §§ 6-1307, 6-1308. Neither the city nor the state requires the medical examiner to provide "full and complete" records (or death certificates) to specific members of the public. *See generally id.*, Ch. 13; *see also generally* HRS §§ 841-1 through -19.

Instead, the ordinance and statutes "support the inference that the office works on behalf of the public at large, not individuals." *Sims-Hearn v. Office of Med. Exam'r*, 834 N.E. 2d 505, 511 (Ill. Ct. App. 2005); *see also LeJeune*

---

[11] An exception is the duty to notify the next of kin of death, which Plaintiff does not seem to dispute—that is, she does not argue she was not notified of Bianca Krizek's death.

[12] *See* Opp'n at 17, ECF No. 177 at PageID #1447 ("Combined, the sum total of these duties constitute a special relationship to society at large and agencies of the state . . . .").

*v. Causey*, 634 So. 2d 34, 37 (La. Ct. App. 1994) (finding "the duty statutorily imposed upon the coroner" requiring coroner to investigate deaths for criminal purposes "is for the benefit of the sovereign, and not the private individual or the individual's private interests"). *Cf. Arquette v. State*, 128 Haw. 129, 284 P.3d 222, 2012 WL 2864352, at *2 (Haw. Ct. App. 2012) (unpub.) (statute creating Hawaii's Office of the Consumer Protection program with the intent to protect the interests of the public "did not create a private right of action for a claim of negligence against the State").

Second, the court rejects Plaintiff's argument that the Medical Examiner's duty to "society at large" applies to individual members of the public "by proxy." Opp'n at 17, ECF No. 177 at PageID #1447. There is simply no support in the law to extend a duty to the public in general to specific individuals "by proxy." And such a rule would ignore the analysis required to determine if a public entity owes a duty to specific individuals.[13]

---

[13] In considering whether such a legal duty should be imposed, the court can consider whether a duty is owed from one party to another. Factors to consider include:

> the foreseeability of the harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury
>
> (continued . . . .)

For the foregoing reasons, the court GRANTS Happy's Motion to Dismiss. Because the court finds Happy owed no duty to Plaintiff as a matter of law, this dismissal is without leave to amend.

2. ***Plaintiff Failed to Sufficiently Plead Facts Alleging Malice or Improper Purpose to Overcome Qualified Immunity***

Happy argues that Plaintiff has failed to cure the deficiency the court previously identified as to all her claims against Happy[14]—that is, Plaintiff failed to adequately plead facts showing malice or improper purpose to overcome the doctrine of qualified or conditional privilege (i.e., qualified immunity) under Hawaii state law for non-judicial state officers. The court agrees. As the court

---

suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk insured.

*Blair v. Ing*, 95 Haw. 247, 260, 21 P.3d 452, 465 (2001) (citation omitted). Besides arguing that the ordinance and statutes, together, create such a relationship, *see* Opp'n at 17, ECF No. 177 at PageID #1447, Plaintiff does not otherwise appear to argue—nor does the court find—that Happy meets the *Blair* factors giving rise to a duty.

[14] The court previously only considered the doctrine of qualified or conditional privilege as to Plaintiff's negligence-based claims. Happy claims—and the court agrees—that the doctrine applies to *all* of Plaintiff's tort claims against Happy, including the fraudulent concealment claim. *See Doe ex rel. Doe v. State of Haw. Dept. of Educ.*, 351 F. Supp. 2d 998, 1017 (D. Haw. Feb. 23, 2004) (applying the doctrine as to both negligence-based and intentional-based torts); *Kaahu v. Randall*, 2018 WL 472996, at *12 (D. Haw. Jan. 18, 2018) (same). For this reason, the court's analysis as to whether Plaintiff pled sufficient facts to allege malice or improper purpose applies to all claims against Happy (i.e., gross negligence, fraud, and misfeasance).

13

found in its prior order, Plaintiff is not necessarily barred, as a matter of law, from asserting negligence-based claims against non-judicial state officials, including Happy. *See* ECF No. 139 at PageID #963-64. But Plaintiff must show "actual malice" or an "improper purpose" by pleading facts of: "(1) [acts] 'substantially certain to cause injury and without just cause or excuse'; (2) 'the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights'; and (3) 'ill will[,] wickedness of heart.'" *Id.* at PageID #962 (quoting *Awakuni v. Awana*, 115 Haw. 126, 141, 165 P.3d 1027, 1042 (2007)).

Pursuant to the court's directions, Plaintiff amended her complaint alleging new facts that Happy failed to include certain causes in Bianca Krizek's death certificate. Specifically, that Happy attributed her death to "'infectious complications following blunt force injury of the lower left extremity with ankle fraction'" without listing "[*any*] *of the significant intervening causes* that contributed to [her] death—intervening causes that were extensively documented in the medical record." FAC ¶ 88, ECF No. 150 at PageID #1118-19. Plaintiff also alleges that Happy has demonstrated "malice and improper purpose in the

//

//

negligent performance of his duties" by

> a.) his receipt of numerous timely requests from Plaintiff
> . . . for a death certificate, b.) his non-production of a
> death certificate within one year and eight months, c.) his
> professional knowledge of the purpose and use of a death
> certificate in articulating an actual cause of death, d.) his
> knowledge that a death certificate was important and
> necessary to Plaintiff. . . , and e.) the ultimate deficiency
> in the completeness, accuracy, and purpose in the final
> document as concluding a definitive cause of death.

FAC ¶ 97, ECF No. 150 at PageID #1121 (footnote omitted).

This allegation, however, does not show acts "substantially certain to cause injury" or with "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's *legal rights*." As discussed previously, Plaintiff failed to identify any purported legal right to a timely and complete death certificate owed to Plaintiff by Happy. Accordingly, it follows that Happy could not have issued such death certificate with malicious disregard of such a right.

Further, even if there were such a purported legal right to a complete and timely death certificate, Plaintiff's FAC does not allege any non-conclusory facts showing malice or an improper purpose. First, the overwhelming majority of the allegations in Plaintiff's FAC are conclusory. *See e.g.,* FAC ¶¶ 89 (Happy "intentionally excluded and disregarded"), 90 (Happy "sought to hide or cover up

the errors"), 91 (Happy "engaged in an ongoing co-conspiracy"), ECF No. 150 at PageID #1119.

Second, Plaintiff's sole non-conclusory fact alleged—that the death certificate was so erroneous that it can be inferred that Happy was malicious or had an improper purpose—is not sufficient.[15] Plaintiff argues that such malice or improper purpose should be inferred from the allegedly deficient death certificate itself. This, in the court's view, falls short. While the allegedly deficient death certificate is indeed a non-conclusory factual allegation, Plaintiff's assertion that Happy's *intent* that such death certificate was created with malice or an improper purpose is conclusory. Put differently, Plaintiff has not alleged anything more to corroborate such purported malicious intent (as opposed to say, mere negligence). For example, Plaintiff does not allege that Happy had a close relationship, or any relationship at all, to any of the Defendants indicating some ill-willed motive to allow the court to draw an inference of malice or improper purpose from the

---

[15] Plaintiff cites Rule 9(b) of the Federal Rules of Civil Procedure, which allows intent to be pled generally for purposes of fraud, if other elements of fraud were pled with particularity. *See* Fed. R. Civ. P. Rule 9(b). But, in determining whether Plaintiff sufficiently alleges malice, the court does not rely on Rule 9(b), but instead considers whether Plaintiff has sufficiently pled the existence of malice or improper purpose using the *Iqbal*/*Twombly* plausibility standard. And applying that standard, the court may certainly draw reasonable inferences. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

deficient death certificate.  Without more, a mere incomplete death certificate does not show intent of malice or improper purpose.[16]  Simply claiming malice is a legal conclusion not entitled to a presumption of truthfulness and does not "nudge [her malice allegation] across the line from conceivable to plausible."  *See Iqbal*, 566 U.S. at 678, 697 (quoting *Twombly*, 550 U.S. at 570).

For the foregoing reasons, the court finds Plaintiff's FAC deficient as to Happy, despite an opportunity for Plaintiff to cure.  Thus, Happy's motion to dismiss is GRANTED, without leave to amend.

**B.  DuMouchel's and QMC Defendants' Motions to Dismiss Claims 3 and 4**

DuMouchel and QMC Defendants (the latter of whom are substantively joined by HRP Defendants) all argue that claims 3 (fraud in concealment) and 4 (misfeasance) should be dismissed against them, because the FAC fails to plead with sufficient heightened particularity to meet the Rule 9(b) standard.[17]  Plaintiff conceded at the hearing that the pleadings as to the non-

---

[16] Plaintiff's other argument raised at the hearing—that she is injured by the inaccurate death certificate because it can be used against her at trial—fails.  The accuracy or veracity of the death certificate, the prejudicial value of its contents, if any, and its admissibility are appropriately determined at motions *in limine* and not appropriate for a motion to dismiss.

[17] QMC Defendants (and joined by HRP Defendants) also move to dismiss the "conspiracy claim" against them.  Conspiracy, however, was not pled as a count, and Plaintiff conceded at the November 12, 2019 hearing that there is no conspiracy claim pled.  Accordingly, the court DENIES the Motion to Dismiss the conspiracy claim as moot.

Happy Defendants are deficient and requests an opportunity to amend. Therefore, because Plaintiff agrees that such claims are deficient (and the court agrees that the FAC falls well short of meeting the Rule 9(b) standard), the court GRANTS DuMouchel's and QMC Defendants' Motions to Dismiss, with leave to amend.[18]

DuMouchel further argues that the claims against him should be dismissed with prejudice and without leave to amend, because Plaintiff already had an attempt to cure these deficiencies as identified in the court's prior order, and specifically, with regards to the misfeasance claim, because Plaintiff has failed to plead *any* facts specifically directed at DuMouchel. The court disagrees.

Because only Happy moved for judgment on the pleadings previously, raising the argument that Plaintiff had failed to allege facts with sufficient particularity as to *him* only, the court relied on such deficiencies pertaining only to Happy. DuMouchel's prior motion for summary judgment rested solely on statute of limitations grounds. Given that DuMouchel is now moving to dismiss the claims in the first instance, Plaintiff should be afforded the opportunity to cure these deficiencies. Further, Plaintiff's wholly deficient pleadings against

---

[18] As the court cautioned at the hearing, Plaintiff is reminded to amend her complaint with care, including consideration of whether any claims are redundant and/or subsumed by other claims already pled. Plaintiff must also pay careful attention to the federal *Iqbal*/*Twombly* pleading standard, and the heightened pleading standard under Rule 9(b) for any fraud counts.

DuMouchel is not reason to dismiss these claims against him with prejudice and without leave to amend. Thus, the court rejects DuMouchel's argument that the claims against him should be dismissed with prejudice and without leave to amend.

## V. CONCLUSION

For the foregoing reasons, the court GRANTS Happy's Motion to Dismiss, without leave to amend. The court GRANTS DuMouchel's and QMC Defendants' Motion to Dismiss, with leave to amend, as to claims 3 and 4 but DENIES QMC's Motion to Dismiss as to the conspiracy claim as moot, and GRANTS HRP Defendants' Substantive Joinder. The court will also allow Plaintiff leave to amend claims 1 and 2 against all non-Happy Defendants. If Plaintiff chooses to do so, she may file a Second Amended Complaint, due no later than December 20, 2019.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 22, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Krizek v. Queens Medical Center, et al.*, Civ No. 18-00293 JMS-WRP, Order (1) Granting Defendant Happy's Motion to Dismiss, ECF No. 156; (2) Granting in Part and Denying in Part QMC Defendants' Motion to Dismiss, ECF No. 158; (3) Granting HRP Defendants' Substantive Joinder, ECF No. 161; and (4) Granting Defendant DuMouchel's Motion to Dismiss, ECF No. 159.