IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HELENA KRIZEK, Birth Mother of BIANCA HELEN KRIZEK (DECEDENT),<br><br>        Plaintiff,<br><br>    vs.<br><br>QUEENS MEDICAL CENTER; HAWAII RESIDENCY PROGRAMS, INC.; DR. MATTHEW DUMOUCHEL; DR. NOBUHIRO ARIYOSHI; DR. ITTIKORN SPANUCHART; DR. WENDY W. HSU; DR. HAO CHIH HO; DR. CHRISTOPHER HAPPY; DR. T. SCOTT GALLACHER,<br><br>        Defendants. | CIV. NO. 18-00293 JMS-WRP<br><br>ORDER (1) DENYING PLAINTIFF'S MOTION FOR NEW TRIAL, ECF NO. 562; (2) VACATING STAY OF PLAINTIFF'S MOTION FOR DENIAL OF TAXATION OF COSTS, ECF NO. 579; (3) RE-OPENING F&Rs, ECF NOS. 577 & 578; AND (4) DIRECTING BRIEFING ON COSTS ISSUES |

## ORDER (1) DENYING PLAINTIFF'S MOTION FOR NEW TRIAL, ECF NO. 562; (2) VACATING STAY OF PLAINTIFF'S MOTION FOR DENIAL OF TAXATION OF COSTS, ECF NO. 579; (3) RE-OPENING F&Rs, ECF NOS. 577 & 578; AND (4) DIRECTING BRIEFING ON COSTS ISSUES

## I.  INTRODUCTION

Following a nine-day jury trial in this medical-malpractice action in

favor of Defendants,[1] Plaintiff Helena Krizek moves for a new trial, *see* ECF No.

---

[1] This case had a long path to trial, including substantial pre-trial motions that resulted in the dismissal of four defendants:  First, the court dismissed Dr. Christopher Happy.  *See* ECF No.

*(continued . . . )*

571-1 ("Motion for New Trial"),[2] on the basis that her case was unfairly prejudiced by the cumulative effect of allegedly improper rulings from this court and alleged misconduct by a defense counsel.  Plaintiff's Motion for New Trial is DENIED for the reasons provided below.

## II.  <u>STANDARD OF REVIEW</u>

A court may grant a motion for a new trial under Federal Rule of Civil Procedure 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "Such reasons may include a verdict that is contrary to the clear weight of the evidence, a verdict based upon false or perjurious evidence, or to prevent a clear miscarriage of justice."  *Crowley v. Epicept Corp.*, 883 F.3d 739, 751 (9th Cir. 2018) (per curiam) (citation and internal quotation marks omitted).  "Unlike with a Rule 50 [judgment

---

187.  Second, the parties stipulated to the dismissal of defendant Dr. Matthew C. DuMouchel following the court's order granting Dr. DuMouchel's *Daubert* motion.  *See* ECF Nos. 289, 293. Third, the parties stipulated to the dismissal of defendant Dr. T. Scott Gallacher.  ECF No. 307. And fourth, the parties stipulated to the dismissal of defendant Dr. Ittikorn Spanuchart.  ECF No. 330.

Thus, heading into jury selection and trial, the case included five Defendants: Queens Medical Center ("QMC") and its physicians Drs. Wendy W. Hsu and Hao Chih Ho (collectively, the "QMC Defendants"); Hawaii Residency Programs, Inc. ("HRP"); and HRP's former-member Dr. Nobuhiro Ariyoshi, who was a resident physician affiliated with HRP while working at QMC at relevant times.

[2] Plaintiff filed a Motion for a New Trial with a redacted Memorandum in Support on October 11, 2022.  ECF Nos. 562 and 562-1.  On October 12, Plaintiff then refiled her redacted Memorandum in Support, which re-labeled the attached exhibits.  ECF No. 565.  Then, on October 18, 2022, Plaintiff filed a sealed and unredacted Memorandum in Support.  ECF No. 571-1.  In this Order, the court cites to the unredacted version of the Memorandum in Support. ECF 571-1.

as a matter of law] determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict.  Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

If an alleged miscarriage of justice is premised on attorney misconduct, a new trial is warranted if the attorney's misconduct "sufficiently permeates the trial such that the Court is convinced that the jury reached its verdict under the influence of passion or prejudice." *Hilliard v. Twin Falls Cnty. Sheriff's Off.*, 2022 WL 4235136, at *2 (D. Idaho Sept. 14, 2022) (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002)).  When evaluating any possible prejudice from attorney misconduct, the court considers "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." *Hemmings*, 285 F.3d at 1193.

If an alleged miscarriage is premised on an evidentiary error, a new trial is warranted if there was an evidentiary error that substantially prejudiced the movant. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). And if an alleged miscarriage is premised on an "erroneous jury instruction[]" or the "failure to give adequate instructions," a new trial is warranted if there was instructional error that prejudiced the movant. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). "In evaluating whether a particular jury instruction was erroneous, the court must consider the jury instructions as a whole, and whether they 'fairly and adequately cover the issues presented, correctly state the law, and are not misleading.'" *Mathew Enter., Inc. v. Chrysler Grp. LLC*, 250 F. Supp. 3d 409, 414 (N.D. Cal. 2017) (quoting *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000)).

## III. <u>DISCUSSION</u>

Plaintiff requests a new trial for her medical-malpractice claims, which relate to her daughter's 2016 death at QMC's hospital in Honolulu, Hawaii. Her request is based on the cumulative effect of trial errors—alleged misconduct by defense counsel and allegedly improper rulings by the court. ECF No. 571-1 at PageID.10938-41. Those alleged errors revolve around the absence of a defendant and "principal witness," *id.*, from the trial in this case: Dr. Nobuhiro Ariyoshi, a named Co-Defendant and former HRP resident, who trained at Kumamoto

4

University in Japan, and attended to Plaintiff's daughter while in residency at QMC.

## A.    Dr. Ariyoshi's Counsel Did Not Act Improperly

Plaintiff claims that Dr. Ariyoshi's counsel committed misconduct, based on the following factual circumstances:  At the beginning of the second day of trial (before the start of evidence, after the first day of jury selection), the court met with the parties outside the presence of the jury to discuss a recent development concerning Dr. Ariyoshi.  *See* ECF No. 571-2 (sealed transcript from second day of trial).  Dr. Ariyoshi, who had been present for jury selection the prior day, did not appear for the second day of trial, when he was expected to be called by Plaintiff in her case in chief.  *See id.* at PageID.10966, 10988.  Mr. Bordner—who served as counsel for both Dr. Ariyoshi and HRP—explained that he had received a text message from Dr. Ariyoshi that morning communicating a significant health problem and that he advised Dr. Ariyoshi to seek immediate medical care instead of appearing at court.  *Id.* at PageID.10965.[3]  As a result, Dr. Ariyoshi was absent from the second day of trial, and sought necessary medical care.  *See id.* at PageID.10972.

---

[3] The exact nature of Dr. Ariyoshi's significant health issues is set forth in sealed transcripts.  *See, e.g.*, ECF Nos. 571-2 and 571-3.

Later that afternoon of the second day of trial, Mr. Bordner provided an update regarding Dr. Ariyoshi, explaining that he had spoken with Dr. Ariyoshi's physician who advised that Dr. Ariyoshi was not in any condition to participate in the trial.  *Id.*  The physician also indicated that Dr. Ariyoshi "was at significantly high risk with respect to the condition that he had."  *Id.*  Dr. Ariyoshi would, in fact, be absent from the remainder of the trial.

From trial days three through seven—after the option of declaring a mistrial was rejected by Plaintiff, *see* ECF No. 565-5 at PageID.10739 (transcript from third day of trial)—the parties presented their cases without Dr. Ariyoshi present, and the court continued to discuss with the parties during breaks how to best handle the situation.  *See, e.g.*, ECF No. 571-3 at PageID.10993–98 (sealed transcript from third day of trial).  On the eighth day of trial, the parties stipulated to the dismissal of Dr. Ariyoshi, ECF No. 520, after HRP agreed to be vicariously liable for any of Dr. Ariyoshi's conduct found to be negligent, *see* ECF No. 572-2 at PageID.11031 (transcript from fourth day of trial explaining the terms under which Plaintiff agreed to dismiss Dr. Ariyoshi).

Plaintiff contends that Mr. Bordner acted improperly regarding Dr. Ariyoshi's situation.  ECF No. 571-1 at PageID.10938-39.  Plaintiff does not directly assert—but certainly implies—that Mr. Bordner directed Dr. Ariyoshi's absence for an improper strategic purpose.  *See, e.g.*, ECF No. 562-2 at

PageID.9818 (asserting that "[r]egardless of Dr. Ariyoshi's emotional distress during the night [before the second day of trial], he was en route to court when Attorney Bordner—without any input at that point from Dr. Ariyoshi—simply instructed him not to come to court"); ECF No. 571-1 at PageID.10939, PageID.10949, PageID.10961 ("During the last few months before trial and particularly during the weeks leading up to trial, . . . Mr. Bordner repeatedly requested that Plaintiff dismiss Dr. Ariyoshi . . . ." "Dr. Ariyoshi was peculiarly within the control of his HRP attorney Mr. Bordner." "Attorney Bordner specifically instructed Dr. Ariyoshi 'not to come to court' on the day Dr. Ariyoshi was to testify—which communication was identified as having occurred when Dr. Ariyoshi was then en route to court and in the vicinity of the courthouse.").

Plaintiff also contends that Mr. Bordner effectively "hid the ball" with respect to Dr. Ariyoshi's "extreme dread of testifying," and that such "misleading and deceptive" conduct amounts to misconduct. *Id*. at PageID.10938, PageID.10954-55; *see also* ECF No. 562-2 at PageID.9818 ("At this point it seemed as if we were hoodwinked—deceived about the condition of Dr. Ariyoshi and his availability at the time Attorney Bordner spoke with him.").

These contentions are nothing but revisionist history—Mr. Bordner did not act improperly. Regarding "hiding the ball," the record indicates that Mr. Bordner was aware of Dr. Ariyoshi's unease before the start of trial. *See, e.g.*, ECF

No. 571-2 at PageID.10965 (Mr. Bordner: "I know that [Dr. Ariyoshi] has been under the care of a health care provider for various problems. And in fact, he and I met with the provider prior to trial to determine the appropriateness of his participation."). But it does not follow that Mr. Bordner should have predicted, much less known, that Dr. Ariyoshi's unease would rise to the health-threatening level that it did. Many trial witnesses experience nervousness before taking the stand or appearing at an actual trial. The possibility that a witness's anxiety will transform into a serious illness does not warrant counsel apprising the court or opposing counsel of that anxiety in every case. It would be imprudent to do so. And Mr. Bordner appropriately did not disclose Dr. Ariyoshi's unease before it became relevant.

Furthermore, there is absolutely nothing in the record indicating that Mr. Bordner directed Dr. Ariyoshi's absence for an improper purpose. To the contrary, the record leads to the conclusion that Mr. Bordner directed Dr. Ariyoshi to stay away from trial on the second day for a completely legitimate purpose—to ensure the well-being of his client, who was suffering from a "significantly high risk" health condition that could be aggravated by a trial appearance. *See, e.g.*, ECF No. 571-2 at PageID.10965 (Mr. Bordner: "I told [Dr. Ariyoshi] that I didn't feel comfortable with his coming to court today given the nature of the message and that I thought he needed to immediately be evaluated [by his healthcare

provider] again. . . .  I don't know whether his emotional state would be harmful potentially to him and I don't want to — any rate, I'm now beyond my expertise.").

The record also demonstrates that it was *after* Dr. Ariyoshi first communicated the existence of his significantly high-risk health problem that Mr. Bordner advised Dr. Ariyoshi not to appear.  *See id.* ("I got this message which I interpreted as somewhat ominous this morning [before the second day of trial]. And I contacted Dr. Ariyoshi and . . . I told him that I didn't feel comfortable with his coming to court today.").  Any reasonable attorney would have done the same under the circumstances.  In fact, Plaintiff's counsel admitted as much at trial.  *See* ECF No. 565-3 at PageID.10461–62 (transcript from second day of trial) ("Mr. Bordner: . . . . But I wasn't trying to manipulate anything by having Dr. Ariyoshi be unavailable.  The Court: No, no, I don't think anyone is saying that at all. [Plaintiff's Counsel]:  No.").[4]

---

[4] Plaintiff emphasizes the assertion that Dr. Ariyoshi was near the courthouse when Mr. Bordner called him and advised him to not appear on the second day of trial.  *See* ECF No. 571-1 at PageID.10939, PageID.10950 n.2.  Plaintiff also emphasizes Mr. Bordner's repeated requests to dismiss Dr. Ariyoshi as an individual Defendant in the weeks leading up to trial, including on the courthouse steps before the second day of trial.  *See id.* at PageID.10949; ECF No. 562-2 at PageID.9814–15.  Plaintiff appears to suggest that Mr. Bordner's strategy was to dismiss Dr. Ariyoshi at all costs by, first, seeking a dismissal through negotiation and, second, by forcing a dismissal through an absence supported by a feigned illness.

But Mr. Bordner's repeated requests are not suspicious given the relationships between the Defendants, specifically, how Dr. Ariyoshi was enrolled in HRP and was working under the supervision of QMC's physicians, who are all Defendants.  *Cf.* ECF No. 571-3 at PageID.10995–98 ("The Court:  To say [QMC is] not responsible for the residents under the control of [its]

(*continued . . .* )

Moreover, to the extent Plaintiff is now suggesting that Dr. Ariyoshi was not as ill as Mr. Bordner claimed, she has specifically waived that argument. On August 31, 2022, after Mr. Bordner placed specific details regarding Dr. Ariyoshi's health condition on the record, the court asked counsel for Plaintiff, "Just to be clear, though, you accept without having to hear from his [Dr. Ariyoshi's] treating physician . . . Mr. Bordner's representations here in court?" Plaintiff's counsel responded. "Yes, I do." The court then asked again, "You trust that, you take that as a truthful proffer?" Plaintiff's counsel stated, "I do." ECF No. 571-2 at PageID.10988-89.

Bottom line: There was no misconduct from Mr. Bordner. In fact, the court viewed then (and views now) that Mr. Bordner acted ethically and transparently. It follows that Plaintiff has failed to show that, under the totality of the circumstances, Mr. Bordner acted so improperly that misconduct sufficiently permeated the trial such that the jury reached its verdict under the influence of passion or prejudice. Mr. Bordner's conduct, and the circumstances at issue, are

---

attendings. . . . How would that look to the public? . . . . [T]hat's a really, really bad look. It's an irresponsible one in my view[,] [g]iven my understanding of the relationship between residents and attendings."). It was never clear to the court why Dr. Ariyoshi—a resident affiliated with HRP and controlled by QMC attending physicians who was at all times working in the scope of those relationships—needed to be named as an individual defendant at all, especially at trial. Also, contrary to Plaintiff's suggestion, Dr. Ariyoshi's apparent close proximity to the courthouse (in an effort to be present) does not undercut the existence of his illness.

not bases to grant a new trial.  *See Hemmings*, 285 F.3d at 1193; *Hilliard*, 2022

WL 4235136, at *2.

**B.     QMC's Counsel Did Not Act in Bad Faith**

Next, Plaintiff contends that QMC's counsel acted in bad faith by

objecting to Plaintiff's beyond-the-scope cross-examination of QMC's expert

witness, Dr. Nakagawa.  ECF No. 571-1 at PageID.10955-56.  According to

Plaintiff, QMC's objections demonstrate a lack of good faith in complying with the

trial "accommodations" agreed upon by the parties and the court, in favor of

Plaintiff, given Dr. Ariyoshi's absence.  *Id.*  Plaintiff specifically contends there

was an understanding that she would be given "leeway when questioning . . .

defense witnesses," including the defense's expert witnesses.  *Id.* at PageID.10955.

Plaintiff, again, is wrong.

It is true that the parties agreed on specific conditions for the dismissal

of Dr. Ariyoshi and for Plaintiff to admit and present evidence connected with Dr.

Ariyoshi.  After several days of negotiations, the parties agreed that Dr. Ariyoshi

would be dismissed as a defendant, and that HRP would be vicariously liable for

any action or inaction of Dr. Ariyoshi.  ECF No. 535 at PageID.8693.  The parties

further agreed that Dr. Ariyoshi's medical notes and deposition would be admitted

absent compelling objections and could be read to the jury despite Dr. Ariyoshi no

longer being a defendant.  That is, after his dismissal, Dr. Ariyoshi would continue

to be treated as a party-opponent for hearsay purposes under Federal Rule of

Evidence 801(d)(2). *Id*. at PageID.8693-94. Plaintiff also stated that she expected

to be able to introduce Dr. Ariyoshi's "admissions or whatever with regard to –

that I would have brought up with Dr. Ariysohi." *Id*. at PageID.8696. After more

discussion, the court clarified the nature of the agreement: "And so somebody

should be able to read an Ariyoshi entry that's in evidence so the jury hears it and

knows what it is in the context of that witness' testimony."[5] *Id*. Plaintiff then

confirmed the scope of the agreement reached by the parties. *See id.* at PageID.

8697 ("The Court:. . . Are those terms agreeable to you? [Plaintiff's counsel]: Yes,

they are. The Court: Okay. So I'm going to treat those, what I just said, as

enforceable terms.").

But Plaintiff is incorrect in asserting that the court promised her

"leeway" in cross-examining Defendants' witnesses. Plaintiff misunderstands the

in-court exchange that she relies upon: On the third day of trial, outside the

presence of the jury, Plaintiff's counsel asked the court whether she could have "a

little leeway in asking questions," "probably of Dr. Hsu, [like] say [the] things that

Dr. Ariyoshi wrote, like he wrote an interim report[?]" ECF No. 565-5 at

---

[5] Dr. Ariyoshi's medical notes were admitted as Exhibit P-18, and counsel for Plaintiff sought to have portions of those records read to the jury. *See* ECF No. 535 at PageID.8761. The court accommodated this request—on September 6, 2022, counsel was permitted to present these medical notes to the jury as part of the reading of Dr. Ariyoshi's deposition. ECF No. 536 at PageID.8790.

PageID.10066.  Before responding to Plaintiff's request, the court asked

Defendants, "you're not going to object to [Dr. Ariyoshi's] statements coming in

as a party opponent given all of these . . . records are going to be in evidence

anyways, right?"  *Id.* at PageID.10666–67.  Plaintiff's counsel interjected before

Defendants responded, clarifying "[t]hat's what I'm getting at."  *Id.* at

PageID.10667.  And after a short exchange with the court, Defendants agreed to

"work in good faith" on admitting Dr. Ariyoshi's deposition.

Thus, although Plaintiff's initial request started with "a little leeway in

asking questions" of defense witnesses, e.g., Dr. Hsu, the ensuing exchange

focused on the topic of admitting Dr. Ariyoshi's statements in light of his expected

dismissal, as Plaintiff's counsel confirmed "[t]hat's what [she was] getting at."

Thus, the "understanding" or "agreement" reached did not concern Plaintiff's

ability to have "leeway" in cross-examining defense witnesses beyond-the-scope of

direct.  QMC's counsel did not, therefore, act in bad faith when objecting to

Plaintiff's beyond-the-scope cross-examination of Dr. Nakagawa.[6]

In short, there was no misconduct from QMC's counsel.  Plaintiff has

failed to show that, under the totality of the circumstances, QMC's counsel acted

so improperly that misconduct sufficiently permeated the trial such that the jury

---

[6] For the same reason, the court neither erred nor abused its discretion when sustaining
the objection, contrary to Plaintiff's contention, ECF No. 571-1 at PageID.10957.

reached its verdict under the influence of passion or prejudice.  Thus, a new trial

cannot be granted based on the actions of QMC's counsel.  *See Hemmings*, 285

F.3d at 1193; *Hilliard*, 2022 WL 4235136, at \*2.

## C.     The Court's Legal Rulings Were Not Erroneous

Plaintiff next contends that the court erred when instructing the jury

concerning Dr. Ariyoshi's absence and also when precluding a "missing witness

inference argument" in Plaintiff's closing.  *See* ECF No. 571-1 at PageID.10940-

41, PageID.10960.

Two instructions are pertinent to Plaintiff's contention:  First, to

explain the initial delay in the proceedings due to Dr. Ariyoshi's absence, the court

told the jury—without mentioning Dr. Ariyoshi by name—that "[w]e have a

witness through no fault of anybody, . . . life happens sometimes, a witness who

was supposed to be scheduled to testify now who can't come for various reasons."

ECF No. 565-3 at PageID.10472.  And second, after it was determined that Dr.

Ariyoshi would not be able to testify at any point during the trial, the court

instructed the jury as follows:

> I do want to inform you, however, before you leave today
> that as of yesterday Dr. Ariyoshi became unavailable to
> attend trial, including being unavailable to testify.  His
> unavailability is not the fault of any party and you should
> not speculate as to why he is unavailable in reaching your
> decision in this case.

ECF No. 565-5 at PageID.10733–34.[7]  Plaintiff argues that those instructions were erroneous because they classified Dr. Ariyoshi's absence as "no fault of anyone" when, according to Plaintiff, Dr. Ariyoshi's absence had the "obvious implication that . . . Dr. Ariyoshi . . . had a conscience of guilt for himself and/or for the other named defendants."  ECF No. 571-1 at PageID.10962.

First, this "consciousness of guilt" argument was not made during the course of the trial.  Although Plaintiff now calls this implication the "elephant in the room," *id*., no such elephant was mentioned during the course of the trial.  *See, e.g.*, ECF No. 526 (Plaintiff's Trial Memorandum seeking permission to make adverse inference argument during closing).  And even if it had been raised, the court would reject it as pure speculation.  Although having to testify as a defendant in a medical malpractice case may have been the proverbial straw that broke the camel's back, there is simply no evidence to prove, let alone suggest, that it was a

---

[7] Although Plaintiff now complains that this instruction was inappropriate, she essentially agreed to the instruction during the course of the trial.  The court read to the parties (outside the presence of the jury) a proposed instruction similar to the one ultimately given.  ECF No. 534 at PageID.11350.  Plaintiff requested the court to supplement its proposed instruction to inform the jury that Dr. Ariyoshi was unavailable due to medical reasons, but the court responded that it was concerned the jury would speculate that Dr. Ariyoshi had a covid infection, and thus become worried about covid spreading in the courtroom.  *Id*. at PageID.11350-51.  The court then offered to explain that that Dr. Ariyoshi became unavailable to testify "as of yesterday" (the second day of trial which was disrupted due to Dr. Ariyoshi's absence).  Plaintiff then agreed with the instruction as modified, and as given by the court.  *Id*. at PageID.11351-52.  Although Plaintiff complains that the court did not provide a final copy of the instruction to the parties prior to reading it to the jury, the fact remains that Plaintiff agreed to the court's instruction as given to the jury.

consciousness of guilt as opposed to other long pending medical issues that resulted in Dr. Ariyoshi's inability to testify.

Second, the court was correct in deeming Dr. Ariyoshi's absence a neutral factor that was irrelevant to the jury's assessment of this case. As discussed above, Mr. Bordner did not direct Dr. Ariyoshi's absence for an improper purpose, and Plaintiff in fact *agreed* that Dr. Ariyoshi did not feign his illness. And, again, although there is little medical evidence in the record concerning the actual underlying cause of Dr. Ariyoshi's condition, there is simply nothing (besides speculation) indicating that his condition suggests a conscience of guilt. In short, everything in the record strongly supports the conclusion that Dr. Ariyoshi's absence had a neutral cause, not based on a consciousness of guilt.

Lastly, Plaintiff claims error with respect to the court's precluding Plaintiff's counsel from arguing in her closing that, given Dr. Ariyoshi's absence, "there could be a[n] inference that [Dr. Ariyoshi] would have testified contrary to the defendants and more favorably to the plaintiff." ECF No. 571-1 at PageID.10960 (quoting ECF No. 565-4 at PageID.10547 (transcript from conference regarding jury instructions)).

The court addressed Plaintiff's argument during the jury-instruction conference. The court explained that under *United States v. Ramirez*, 714 F.3d 1134 (9th Cir. 2013), a missing-witness-inference argument would not be

16

permitted, because there was no indication that Dr. Ariyoshi's unavailability was
peculiarly within the power of the defense,[8] and because the circumstances did not
support an inference that Dr. Ariyoshi's testimony would have been unfavorable to
the defense's case.[9]  *See* ECF No. 565-4 at PageID.10552–53.  Nothing has
changed post-trial.

As for the first *Ramirez* requirement, whether Dr. Ariyoshi was
peculiarly within the power of one or both of the defendants, the Ninth Circuit has
recognized that when a witness is "equally unavailable" to both parties, a missing
witness inference is not appropriate.  *See United States v. Noah*, 475 F.2d 688, 691
(9th Cir. 1973) (stating that a missing witness instruction was properly rejected
where a witness was "equally unavailable" to both parties); *United States v.
Brutzman*, 731 F.2d 1449 (9th Cir. 1984) (finding that the invocation of the Fifth
Amendment privilege against self-incrimination makes a witness unavailable to
both parties, and thus not peculiarly within the power of the government); *see also*

---

[8] Plaintiff has no basis to argue that Dr. Ariyoshi's absence was peculiarly within the
power of HRP, QMC, Dr. Hsu, or Do Ho.  And although Dr. Ariyoshi was a defendant himself,
it is a stretch to argue that his illness was within his own power, given the realities of his illness.
*See* ECF No. 571-2 at PageID.10986 (the court discussing the "reality" of Dr. Ariyoshi's
condition).

[9] *Ramirez* reiterated that "[a] missing witness instruction is appropriate if two
requirements are met: (1) '[t]he party seeking the instruction must show that the witness is
peculiarly within the power of the other party' and (2) 'under the circumstances, an inference of
unfavorable testimony [against the non-moving party] from an absent witness is a natural and
reasonable one.'"  714 F.3d at 1137 (quoting *United States v. Leal–Del Carmen,* 697 F.3d 964,
974–75 (9th Cir.2012)).

*United States v. Tavarez*, 626 F.3d 902, 905 (7th Cir. 2010) (reciting the rule that a party is not entitled to a missing witness instruction where the witness is equally unavailable to each party); *United States v. Lattanzio*, 2018 WL 1837856 (D. N.J. April 16, 2018) (stating that if a "witness is equally unavailable to both sides, [a missing witness instruction] should not be given"); *United States v. Jenkins*, 687 F. App'x. 71, 73 (2d Cir. 2017) (same); *United States v. Richard*, 678 F. App'x 927, 941 (11th Cir. 2017) (same).  Here, there is simply no question—due to his illness, Dr. Ariyoshi was "equally unavailable" to both Plaintiff and the Defendants.[10]  If, for example, Dr. Ariyoshi had simply told the Plaintiff that he refused to come to court, he was still within the court's subpoena power.

And as to *Ramirez's* second element, Plaintiff's argument that the circumstances support an inference that Dr. Ariyoshi's testimony would have been unfavorable to the defense's case is pure speculation.  It is just as likely, if not more so, that Dr. Ariyoshi would have testified in a manner supporting the theory

---

[10] Plaintiff complains that the court "treated the absence of Dr. Ariyoshi as if the absence was not the fault/responsibility of any party, even though Dr. Ariyoshi was under the control" of both defendants."  ECF No. 571 at PageID.10940.  This statement is troubling, and representative of Plaintiff's attempt to conflate whether a party had "control" over Dr. Ariyoshi and the *reason* for his absence.  As is obvious, even if Dr. Ariyoshi was "under the control" of Defendants given his affiliation with them, his *absence* was not under the control of any party.  Dr. Ariyoshi was unavailable for one simple reason—his serious health issues did not permit him to testify.  And the record amply demonstrates that his health issues were not the fault of the court, Plaintiff, or any Defendant.  The court appropriately treated Dr. Ariyoshi's absence as nobody's fault, making him "equally unavailable" to all parties.

that the medical decisions were not negligent.  Further, Plaintiff was able to present evidence of Dr. Ariyoshi's medical records (which included his statement that "[o]n the day of admission, she was disoriented and it was likely due to septic and Wernicke encephalopathy given her alcohol abuse and vitamin deficiency," ECF No. 536 at PageID.8790) as well as excerpts from his deposition.

In sum, Plaintiff has failed to show that the court erred when instructing the jury and controlling closing arguments, much less that the court's legal rulings as a whole, did not fairly and adequately cover the issues presented, incorrectly stated the law, or were misleading.  A new trial is not, therefore, warranted based on the court's legal rulings.  *See Murphy*, 914 F.2d at 187; *Mathew Enter., Inc.*, 250 F. Supp. 3d at 414.[11]

## D.   The Evidence Weighs Heavily in Favor of the Defense

Further, even assuming *arguendo* that the court committed error and/or that defense counsel acted improperly, there would still be no "miscarriage of justice" warranting a new trial for the additional reason that the evidence presented at trial weighed heavily in favor of the defense.  *See United States v. McGee*, 2013 WL 2645211, at *4 (N.D. Cal. June 12, 2013) ("[T]o warrant a new trial, the Court must find that 'the evidence weighs heavily against the verdict,'

---

[11] The court has considered the "cumulative impact" of the alleged errors and does not find a new trial to be warranted under all the circumstances.

[*United States v. Merriweather*, 777 F.2d 503, 507 (9th Cir. 1985)], such that 'a serious miscarriage of justice may have occurred.'  [*United States v. A. Lanoy Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)].").  The evidence weighed heavily—quite heavily—in favor of the defense's theory that Plaintiff's deceased daughter did not have Wernicke's Encephalopathy, the premise of Plaintiff's medical-malpractice claim.  Specifically, defendants provided credible testimony from three expert-witness physicians (from different perspectives) that MRI scans provided proof that Plaintiff's daughter did not suffer from Wernicke's Encephalopathy, or that physicians otherwise met the applicable standards of care.  In contrast, Plaintiff's case was based on an expert who—as argued to the jury—had not been board certified in critical care medicine for 25 years, and was not a full-time intensive-care-unit physician.  The *jury* weighed all the evidence, and in this instance the court easily cannot find that the evidence weighed "heavily against the verdict."

## IV.  PENDING POST-TRIAL MATTERS

The court now addresses other pending post-trial matters.  On September 23, 2022, HRP and the QMC Defendants both filed respective Bills of Costs, ECF Nos. 549 and 550.  On the same day, Plaintiff objected to those Bills of Costs, but did so only with respect to the "taxation of costs in this case for equitable reasons," and specifically not with respect to the "itemized *contents* of

the Bill[s] of Costs filed." ECF Nos. 551, 552. Plaintiff then filed her now-denied

Motion for New Trial on October 11, 2022. ECF No. 562. The subsequent

procedural history is confusing, and thus the court explains the posture before

setting forth further briefing deadlines on the pending Bills of Costs.

On October 31, 2022, while the Motion for New Trial was pending,

Magistrate Judge Wes Reber Porter issued two Findings and Recommendations

recommending that the court grant in part both Defendants' Bills of Costs. ECF

Nos. 577, 578 ("Costs F&Rs"). Judge Porter also recommended that the court stay

proceedings regarding taxation of costs, pending the resolution of the then-pending

New Trial Motion. At that point, either side had the opportunity to file written

objections to the Costs F&Rs within 14 days after service of the Costs F&Rs, and

have this District Judge review the Costs F&Rs. *See* 28 U.S.C. § 636(b)(1); Local

Rule 74.1(a). A week later, on November 7, 2022, rather than filing "written

objections," Plaintiff filed a "Motion for Denial of Taxation of Costs on Equitable

Grounds and in the Alternative for Stay of Taxation of Costs Pending Motion for

New Trial and Appeal," ECF No. 579. Although not clear, it appears that this

Motion for Denial of Taxation of Costs was intended to be (or to function as)

Plaintiff's written objections to the Costs F&Rs under 28 U.S.C. § 636(b)(1) and

Local Rule 74.1(a). A separate motion would have been unnecessary and improper

(as duplicative) to challenge the taxation of costs, although a motion might be

necessary to seek to *stay* an award of costs pending an appeal to the Ninth Circuit, if the court ultimately awards costs by adopting the Costs F&Rs.

On November 9, 2022, the court issued an Entering Order ("EO") holding in abeyance the Motion for Denial of Taxation of Costs and staying consideration of the Costs F&Rs until after it ruled on the Motion for New Trial. ECF No. 581.  The court issued that EO before the expiration of the 14-day period for the parties to object to the Cost F&Rs, *see* Local Rule 74.1(a), and before the deadline for Defendants to oppose the Motion for Denial of Taxation of Costs (if it was a proper separate motion, and not an objection to the Costs F&Rs), *see* Local Rules 7.1 & 7.2.  The EO also stated that "[a]t this time, the court is not deciding whether the Motion [for Denial of Taxation of Costs] should be construed at least in part as an objection to the F&Rs."  ECF No. 581.

Having now denied the Motion for New Trial, the court REOPENS for consideration the Costs F&Rs, ECF Nos. 577 and 578.  The court will allow either side to file Objections under Local Rule 74.1(a) to the Costs F&Rs.  The deadline for any party to object to the Costs F&Rs is 14 days from issuance of this Order (i.e., December 23, 2022).  Thereafter, the parties may file a respective response to any Objections within 14 days (i.e., January 6, 2023), as set forth in Local Rule 74.1(b).

In so doing, Plaintiff must clarify whether or not her "Motion for

Denial of Taxation of Costs on Equitable Grounds," ECF No. 579, is intended to

be her Objections to the Costs F&Rs.  That is, she could simply file a statement on

or before December 23, 2022, that makes clear that her Motion for Denial of

Taxation of Costs is intended to be her Objections.  If, however, she intended to

file *additional* Objections, the court will not allow piecemeal challenges to the

Costs F&Rs and will then require Plaintiff to *withdraw* her Motion for Denial of

Taxation of Costs, and incorporate any relevant challenges in a single document

objecting to the Costs F&Rs.

## V.  <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's Motion for New Trial,

ECF No. 562, is DENIED.  The Costs F&Rs, ECF Nos. 577 & 578, are RE-

OPENED for consideration, with the deadlines as specified above.  That is, any

party may file Objections pursuant to Local Rule 74.1(a) to the Costs F&Rs by

///

///

///

///

///

///

23

December 23, 2022, with Responses due within 14 days (i.e., by January 6, 2023)

under Local Rule 74.1(b).

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, December 9, 2022.



           /s/ J. Michael Seabright
           J. Michael Seabright
           United States District Judge

*Krizek v. Queens Med. Ctr. et al.*, Civ. No. 18-00293 JMS-WRP, Order (1) Denying Plaintiff's Motion for New Trial, ECF No. 562; (2) Vacating Stay of Plaintiff's Motion for Denial of Taxation of Costs, ECF No. 579; (3) Re-Opening F&Rs, ECF Nos. 577 & 578; and (4) Directing Briefing on Costs Issues